**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO, | : |
| | : |
| and | : |
| | : Civil Action No. 1:04CV00138 |
| PROFESSIONAL AIRWAYS SYSTEMS SPECIALISTS, AFL-CIO, | : |
| | : Judge: Rosemary M. Collyer |
| Plaintiffs, | : |
| | : |
| vs. | : |
| | : |
| FEDERAL SERVICE IMPASSES PANEL | : |
| | : |
| and | : |
| | : |
| FEDERAL LABOR RELATIONS AUTHORITY, | : |
| | : |
| Defendants. | : |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs National Air Traffic Controllers Association, AFL-CIO ("NATCA") and Professional Airways Systems Specialists, AFL-CIO ("PASS") respectfully move the Court pursuant to Rule 56, Fed. R. Civ. P., to grant summary judgment in their favor. Plaintiffs respectfully submit that there are no genuine issues of material fact in dispute and that they are entitled to judgment as a matter of law.

In support of this Motion, Plaintiffs submit the accompanying Statement of Material Facts as to Which There Is No Genuine Issue, Memorandum of Points and Authorities in Support of Plaintiffs' Motion, and the Declarations of Thomas Brantley and

John Carr and the Exhibits thereto.

Respectfully submitted,

_____
William W. Osborne, Jr.
D.C. Bar Identification No. 912089

Debra L. Willen
D.C. Bar Identification No. 257634
Osborne Law Offices, P.C.
4301 Connecticut Avenue, N.W.
Suite 108
Washington, D.C. 20008
(202) 243-3200

_____
Marguerite L. Graf
D.C. Bar Identification No. 455693
General Counsel
National Air Traffic Controllers
Association, AFL-CIO
1325 Mass. Avenue, N.W.
Washington, D.C. 20005
(202) 628-5451

_____
Michael D. Derby
D.C. Bar Identification No. 384632
PASS Counsel
Professional Airways Systems
Specialists, AFL-CIO
1150 17th Street NW
Washington, DC 20036
(202) 293-7277

Counsel for Plaintiffs

Dated: March 16, 2004

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

NATIONAL AIR TRAFFIC CONTROLLERS  :
ASSOCIATION, AFL-CIO,              :
                                   :
    and                          :
                                   : Civil Action No. 1:04CV00138
PROFESSIONAL AIRWAYS SYSTEMS       :
SPECIALISTS, AFL-CIO,              :
                                   : Judge: Rosemary M. Collyer
              Plaintiffs,     :
                                   :
 vs.                              :
                                   :
FEDERAL SERVICE IMPASSES PANEL     :
                                   :
    and                          :
                                   :
FEDERAL LABOR RELATIONS AUTHORITY, :
                                   :
              Defendants.     :
                                   :

---

**STATEMENT OF MATERIAL FACTS AS**
**TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 56.1, D.C. L.Cv.R., Plaintiffs
National Air Traffic Controllers Association, AFL-CIO ("NATCA")
and Professional Airways Systems Specialists, AFL-CIO ("PASS")
submit this Statement of Material Facts as to Which There Is No
Genuine Issue in support of their Motion for Summary Judgment.

    **A.   THE PARTIES**

1. Plaintiff NATCA is a labor organization within the
meaning of 5 U.S.C. §7103(a)(4), which represents 16,000
employees of the Federal Aviation Administration ("FAA"),
including 1,800 employees in the following eleven bargaining
units: Notice to Airman Office Specialists; Budget and Financial

Analysis Specialists; Logistic, Finance, Accounting and Information Services Engineers (Oklahoma City and Atlantic City); Automatic Specialists; Aerospace Medical Nurses; FAA Airports Decision employees, FAA Aircraft Certification Decision employees, Regional Counsel Offices employees, Air Worthiness Engineers (Oklahoma City); and Drug Abatement Specialists. Declaration of John Carr ("Carr Decl.") ¶2.

2. Plaintiff PASS is a labor organization within the meaning of 5 U.S.C. § 7103(a)(4), representing approximately 11,000 FAA employees including, *inter alia*, some 4,000 FAA employees in the following four bargaining units: Flight Standards; Aviation Standards; Manufacturing Inspection District Office; and AFS-700 employees.  Declaration of Thomas Brantley ("Brantley Decl.") ¶2.

3. The Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§7101, *et seq.*, (Chapter 71), provides for collective bargaining between federal agencies and their employees' exclusive bargaining representatives, over "conditions of employment" as defined in 5 U.S.C. §§7103(a)(14), 7114(b)(2).  Defendant Federal Labor Relations Authority ("FLRA" or "the Authority") is an agency of the United States Government, established by Congress under 5 U.S.C. §7104(a) for the purpose of administering Chapter 71 of Title 5 and, *inter alia*, of affording "protection of the right of [federal] employees to organize, bargain collectively, and participate through labor organizations of their own choosing

in decisions which affect them...." 5 U.S.C. §7101(a).

4. Defendant Federal Service Impasses Panel ("FSIP" or "the Panel") is "an entity within the Authority" established under 5 U.S.C. §7119(c)(1) "to provide services and assistance to agencies and exclusive representatives in the resolution of negotiation impasses between agencies and exclusive representatives."  5 U.S.C. §7119(a).

### B.   THE INSTANT DISPUTE

5.  On July 8, 2003, NATCA filed a formal Request for Assistance with the FSIP, requesting that the Panel consider an impasse reached in collective bargaining negotiations with the FAA in the eleven bargaining units described in ¶1, *supra*, and identifying the specific subjects of bargaining over which the impasse had occurred (Case No. 03 FSIP 144). Carr Decl. ¶3.

6.  On various dates in July 2003, PASS filed formal Requests of Assistance with the FSIP, notifying the Panel that an impasse had been reached in collective bargaining negotiations with the FAA in the four bargaining units described in ¶2, *supra*, and identifying the specific subjects of bargaining over which the impasse had occurred (Case Nos. 03 FSIP 149, 150, 151 and 157).  Brantley Decl. ¶4.

7.  On September 22, 2003, the FAA filed two Statements of Position with the Panel.  In those Statements of Position, the FAA took the position that the Air Traffic Management System

3

Performance Act of 1996 completely divested the FSIP of any jurisdiction over collective bargaining between the FAA and NATCA and PASS.  Carr Decl. ¶4; Brantley Decl. ¶5.

8.   The FSIP thereafter solicited legal positions from the parties.  Carr Decl. ¶5; Brantley Decl. ¶6.

9.   On January 9, 2004, the FSIP issued companion decisions regarding NATCA's and PASS's Requests for Assistance.  Carr Decl. ¶6; Brantley Decl. ¶7.  The Panel clearly recognized the existence of a *bona fide* bargaining impasse in each case. Nonetheless, in each decision, the FSIP advised the parties that it would not resolve the existing collective bargaining impasses, "because it is unclear whether the Panel has the authority to resolve the parties' impasse[s]."  Compl., Exh. A at 1, Exh. B at 1.  However, the FSIP stated that,

> This determination to decline to assert jurisdiction is made without prejudice to the right of either party to file another request for assistance if the underlying threshold question is resolved in the appropriate forum consistent with the Union's interpretation of the applicable statutory provisions.

Compl., Exh. A at 4, Exh. B at 4.

10.   On January 30, 2004, NATCA and PASS filed the instant action, seeking resolution of this jurisdictional question. Specifically, Plaintiffs have requested that the Court declare that the FSIP's decisions of January 9, 2004 violate the Panel's statutory authority, exceed the FSIP's jurisdiction under 5 U.S.C. §7119 and deprive NATCA, PASS and affected FAA employees

4

of their statutory right to engage in collective bargaining in violation of 5 U.S.C. §§ 7101 *et seq.* In addition, plaintiffs request that the Court order the FSIP to resolve the existing impasses. Compl. at 8-9.

11.  On January 30, 2004, the FAA submitted to the United States Congress its final collective bargaining proposals for terms and conditions of employment that were the subject of the impasse in collective bargaining between NATCA and the FAA, and of NATCA's Request for Assistance filed with the FSIP. Carr Decl., ¶7. In its submission to Congress, the FAA states that it "plans to put into effect these important changes ... absent Congressional action, sixty (60) days after submission, excluding any period during which Congress has adjourned *sine die*[,]" or on March 30, 2004. Carr Decl., ¶7, Exh. 1 at 3.

12.  The FAA has indicated that it is in the process of preparing a submission to Congress of its proposed terms and conditions of employment that are the subject of the impasse in collective bargaining between PASS and the FAA. Brantley Decl., ¶8.

13.  To date, the FAA has given no indication that it will await resolution of this litigation before acting unilaterally. Carr Decl., ¶7.

**C.  THE FAA'S PERSONNEL MANAGEMENT SYSTEM**

14. On November 15, 1995, Congress enacted Section 347 of

the 1996 Department of Transportation ("DOT") Appropriations Act, Pub. L. No. 104-50, §347, 109 Stat. 460 (1995), directing the FAA to develop and implement a new personnel management system, to address "the unique demands on the agency's workforce."  Section 347(b) specifically stated that Chapter 71 of Title 5 of the U.S. Code would not apply to the new FAA personnel management system, except for the prohibition of the right to strike in §7116(b)(7). Pub. L. No. 104-50, §347(b).

15. On March 28, 1996, the FAA issued a new Personnel Management System ("PMS"), organized in chapters addressing Agency staffing, compensation, performance management, training and executive systems.  Carr Decl., Exh. 2. Chapter V, Labor Relations provided as follows:

EMPLOYEE RIGHTS

> The FAA, all FAA employees, and all labor organizations representing FAA employees shall have the same rights, and be subject to the same responsibilities and limitations, as are available to all Federal agencies, employees, and labor organizations under 5 U.S.C. Chapter 71. Id. at 35.

16.  This provision is also contained in the most recent version of the PMS, currently posted on the FAA's website at: www.faa.gov/ahr/policy.  Carr Decl., ¶9, Exh. 3.

17.  On March 29, 1996, Congress passed House Joint Resolution 170, Pub. L. 104-122, 110 Stat. 876 (1996), which amended Section 347 of the 1996 DOT Appropriations Act, to

6

require the applicability of Chapter 71 of Title 5, relating to
labor-management relations, to the FAA's new PMS.

18.   On October 9, 1996, Congress enacted the Air Traffic
Management System Performance Improvement Act of 1996, Pub. L.
104-264, Title II, 110 Stat. 3227 (1996) ("the 1996 FAA Act") to
establish a procedure for "developing and making changes to the
personnel management system initially implemented by the
Administrator ... on April 1, 1996 ...." 49 U.S.C. §40122(a).

19.   The 1996 FAA Act required the FAA to negotiate with its
employees' exclusive collective bargaining representatives over
any changes to the FAA PMS, and to engage in mediation if such
negotiations did not produce an agreement.   In the event of an
impasse over proposed changes to the PMS, the 1996 FAA Act
provided for the FAA Administrator to transmit its proposals,
along with the bargaining representative's objections, to
Congress. Proposed changes to the PMS were not to take effect
until sixty days after the Agency's submission to Congress. 49
U.S.C. §40122(a).

20.   At the same time, Congress stipulated that all labor-
management agreements then in effect were to remain in effect
until their expiration dates. 49 U.S.C. §40122(f).

21.   In 2000, Congress codified the provisions of House
Joint Resolution 170, by adding subsection (g) to 49 U.S.C.
§40122 to specify that Chapter 71 of Title 5, "relating to labor-

management relations," would apply to the FAA PMS.  Pub. L. No.

106-181, Title III, §307(a), 114 Stat. 124 (2000).

                    Respectfully submitted,


                    _____
                    William W. Osborne, Jr.
                    D.C. Bar Identification No. 912089

                    Debra L. Willen
                    D.C. Bar Identification No. 257634
                    Osborne Law Offices, P.C.
                    4301 Connecticut Avenue, N.W.
                    Suite 108
                    Washington, D.C. 20008
                    (202) 243-3200


                    _____
                    Marguerite L. Graf
                    D.C. Bar Identification No. 455693
                    General Counsel
                    National Air Traffic Controllers
                    Association, AFL-CIO
                    1325 Mass. Avenue, N.W.
                    Washington, D.C. 20005
                    (202) 628-5451


                    _____
                    Michael D. Derby
                    D.C. Bar Identification No. 384632
                    PASS Counsel
                    Professional Airways Systems
                    Specialists, AFL-CIO
                    1150 17th Street NW
                    Washington, DC 20036
                    (202) 293-7277
                    Counsel for Plaintiffs


Dated: March 16, 2004

8

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO, | : |
| | : |
| and | : |
| | : Civil Action No. 1:04CV00138 |
| PROFESSIONAL AIRWAYS SYSTEMS SPECIALISTS, AFL-CIO, | : |
| | : Judge: Rosemary M. Collyer |
| Plaintiffs, | : |
| | : |
| vs. | : |
| | : |
| FEDERAL SERVICE IMPASSES PANEL | : |
| | : |
| and | : |
| | : |
| FEDERAL LABOR RELATIONS AUTHORITY, | : |
| | : |
| Defendants. | : |
| | : |

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

This case stems from impasses in collective bargaining between the National Air Traffic Controllers Association, AFL-CIO ("NATCA") and Professional Airways Systems Specialists, AFL-CIO ("PASS") and the Federal Aviation Administration ("FAA" or "the Agency") and from the refusal of the Federal Service Impasses Panel ("FSIP" or "the Panel")-- the Agency established by Congress to provide federal unions and agencies with assistance in resolving impasses in their collective bargaining negotiations -- to exercise its mandatory jurisdiction.

NATCA and PASS seek a proper resolution of their bargaining

impasses with the FAA by the impartial FSIP that has been statutorily charged with that task.  We contend that plain statutory language requires the FSIP to exercise its jurisdiction to resolve these bargaining impasses, that the Panel's refusal to exercise such jurisdiction directly violates its statutory authority, and that this Court has authority to remedy that violation under the Supreme Court's decision in <u>Leedom v. Kyne</u>, 355 U.S. 184 (1958) (hereinafter "<u>Leedom</u>") and its progeny.

We press that contention with urgency in light of the FAA's declared intention to circumvent the FSIP and to unilaterally impose its bargaining proposals on or about March 30, 2004.

## STATEMENT OF FACTS

Plaintiffs have separately filed a Statement of Material Facts as to Which There Is No Genuine Dispute ("Pl. St. of Facts") which shows essentially as follows:

### A. THE INSTANT COLLECTIVE BARGAINING DISPUTE

NATCA represents some 16,000 FAA employees, including approximately 1,800 employees in the eleven bargaining units involved in the instant case, and PASS represents approximately 11,000 FAA employees, including some 4,000 in four bargaining units involved in the instant case. Pl. St. of Facts, ¶¶ 1,2.

The Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§7101, *et seq.* (i) requires federal agencies, such as the FAA, and the exclusive bargaining representatives of the agency's

employees, such as NATCA and PASS, to engage in "good faith" collective bargaining negotiations over "conditions of employment," 5 U.S.C. §§7103(a)(14), 7114(b)(2); and (ii) establishes the FSIP, as an entity within the Federal Labor Relations Authority ("FLRA"), whose function is "... to provide services and assistance to agencies and exclusive representatives in the resolution of negotiation impasses." 5 U.S.C.§ 7119 (c)(1).[1]

On July 8, 2003, after extensive collective bargaining negotiations between the FAA and NATCA had failed to produce initial collective bargaining agreements in eleven bargaining units, NATCA filed a formal Request for Assistance with the FSIP to resolve the impasse the parties had reached over designated bargaining issues. Pls. St. of Facts, ¶5. Likewise, on various dates in July, 2003, after extensive collective bargaining negotiations had failed to produce agreement in four bargaining units, PASS invoked the FSIP's process to resolve impasses over specified bargaining issues. Id., ¶6.

The FAA responded to those requests by claiming that the Air Traffic Management System Performance Improvement Act of 1996 ("the 1996 FAA Act") divested the FSIP of any jurisdiction over collective bargaining impasses between the FAA and NATCA and

---

[1] The full text of 5 U.S.C. §7119 is reprinted in the Statutory Addendum attached to this Memorandum.

between the FAA and PASS.  Relying upon a series of legislative acts that mandated the FAA's establishment of a new Personnel Management System ("PMS") and prescribed processes for negotiating over FAA "changes to the personnel management system,"  the FAA announced that it would present its final collective bargaining proposals to Congress and, absent Congressional action within sixty days, would impose those proposals unilaterally. ¶¶7, 11.

On January 9, 2004, the FSIP formally advised the parties that it would not act on the NATCA and PASS Requests for Assistance because, in the Panel's view, it was "unclear" whether or not the Panel had statutory authority to resolve the parties' impasses.  Id., ¶9  The FSIP added that its refusal to provide assistance was without prejudice to the unions' right to file another request for FSIP assistance once the jurisdictional question raised by the FAA had been resolved in their favor "in the appropriate forum."  Id.

Accordingly, on January 30, 2004, the Plaintiffs filed the instant action: (i) requesting this Court to declare that the FSIP's January 9, 2004 decisions violate the Panel's statutory authority and deprive NATCA, PASS and the affected FAA employees of their statutory right to engage in collective bargaining; and (ii) seeking an order directing the FSIP to provide assistance in resolving NATCA and PASS impasses with the FAA in accordance with

4

5 U.S.C. §7119(c).

On the same date that this action was filed, the FAA submitted to Congress its final proposed collective bargaining agreements for the eleven NATCA-represented bargaining units with a statement of its intention to impose those agreements sixty days thereafter -- i.e., on March 30, 2004 -- absent Congressional action.  Id., ¶11.

In addition, the FAA has indicated that it is in the process of preparing a parallel submission to Congress covering the PASS-represented bargaining units.   Id., ¶12.

### B. THE FAA'S PERSONNEL MANAGEMENT SYSTEM

On November 15, 1995, Congress enacted Section 347 of the 1996 Department of Transportation ("DOT") Appropriations Act, Pub. L. No. 104-50, § 347, 109 Stat. 460 (1995), directing the FAA to develop and implement a new personnel management system, to address "the unique demands on the agency's workforce." Section 347(b) specifically stated that Chapter 71 of Title 5 of the U.S. Code would not apply to the new FAA personnel management system, except for the prohibition of the right to strike in §7116(b)(7).  Pub. L. No. 104-50, §347(b).

On March 28, 1996, acting in response to Congress' directive, the FAA issued a new Personnel Management System ("PMS"). The March 28, 1996 PMS was organized in Chapters addressing Agency staffing, compensation, performance management,

training and executive systems. Of particular significance here,

Chapter V, Labor Relations provided:

> The FAA, all FAA employees, and all labor organizations representing FAA employees shall have the same rights, and be subject to the same responsibilities and limitations, as are available to all Federal agencies, employees, and labor organizations under 5 U.S.C. Chapter 71.

<u>Id.</u>, ¶15.[2]

On March 29, 1996, nearly simultaneous with the FAA's promulgation of the new PMS, Congress passed House Joint Resolution 170, Pub. L. 104-122, 110 Stat. 876 (1996). That legislation *amended* Section 347 of the 1996 DOT Appropriations Act *to require* that the FAA PMS adhere to "chapter 71, relating to labor-management relations." Pub. L. 704-722, 110 Stat. 876.[3]

On October 9, 1996, Congress enacted the Air Traffic Management System Performance Improvement Act of 1996, Pub. L. 104-264, Title II, 110 Stat. 3227 (1996) ("the 1996 FAA Act") to establish a procedure for "developing and making changes to the personnel management system initially implemented by the Administrator ... on April 1, 1996 ...." 49 U.S.C. §40122(a).[4]

The 1996 FAA Act required the FAA to negotiate with its

---

[2]This same provision is contained in the current version of the FAA PMS, posted on the Agency's website at: **www.faa.gov/ahr/policy**. Pls. St. of Facts, ¶16.

[3]The full text of House Joint Resolution 170 is reprinted in the Statutory Addendum.

[4]The full text of 49 U.S.C. §40122 is reprinted in the Statutory Addendum.

employees' exclusive collective bargaining representatives over "changes to the personnel management system," and to engage in mediation if such negotiations did not produce an agreement on the changes to the PMS the FAA proposed. 49 U.S.C. §40122(a)(1) and (2).  In the absence of an agreement on the FAA's proposals to change the PMS, the 1996 FAA Act provided for the FAA Administrator to transmit the FAA's proposed changes to the PMS to Congress, along with the bargaining representative's objections thereto.  Proposed changes to the PMS were not to take effect until sixty days after the Agency's submission to Congress absent intervening Congressional action. 49 U.S.C. §40122(a)(2).

At the same time, Congress stipulated that all labor-management agreements then in effect were to remain in effect until their expiration dates, irrespective of any intervening changes in the overall PMS. 49 U.S.C. §40122(f).

Finally, in 2000, Congress codified the provisions of House Joint Resolution 170, to specify in 49 U.S.C. §40122(g) that the FAA PMS include "chapter 71, relating to labor-management relations."  Pub. L. No. 106-181, Title III, §307(a), 114 Stat. 124 (2000).

## ARGUMENT

This case presents two questions of law: (1) whether the FSIP has mandatory statutory authority to assist the FAA and NATCA and PASS in resolving the existing collective bargaining

7

impasses; and (2) if so, whether this Court has jurisdiction to remedy the FSIP's abdication of that statutory authority.  We contend that the FSIP is mandated by plain statutory language to resolve the plaintiff unions' impasses with the FAA, the FAA's protestations notwithstanding, and that this Court has jurisdiction under <u>Leedom</u> to direct the Panel to do so.

**A.   THE FSIP HAS THE AUTHORITY AND DUTY TO RESOLVE PLAINTIFFS' COLLECTIVE BARGAINING IMPASSES WITH THE FAA.**

The Civil Service Reform Act ("CSRA") governs federal collective bargaining; in contrast to the National Labor Relations Act, the CSRA does not provide for the resolution of collective bargaining impasses through "[t]he presence of economic weapons in reserve, and their actual exercise on occasion by the parties...." <u>NLRB v. Insurance Agents</u>, 361 U.S. 477, 489 (1960).  Rather, the CSRA specifically prohibits federal employee strikes, 5 U.S.C. §7116(b)(7), and establishes the FSIP to provide an alternative process for resolving collective bargaining impasses between federal agencies and the exclusive bargaining representatives of their employees, 5 U.S.C. §7119(c).

Congress mandated that the FSIP "*shall* promptly investigate any impasse presented to it", "*shall* consider the impasse", and "*shall* either – (i) recommend to the parties procedures for the resolution of the impasse; or (ii) assist the parties in resolving the impasse...."  5 U.S.C. §7119(c)(5)(A) (emphasis

8

added).  Thus, the Panel "shall" assist the parties through whatever methods it finds appropriate and failing success, "may" hold hearings, receive testimony, issue subpoenas or take any other action necessary to resolve the impasse, including prescribing the inclusion of specific language in the parties' collective bargaining agreement.  5 U.S.C. §7119(c)(5)(B).  <u>See also</u> <u>Council of Prison Locals v. Brewer</u>, 735 F.2d 1497, 1498 (D.C. Cir. 1984).

Nothing in the 1996 FAA Act purports to divest the FSIP of its mandatory jurisdiction to resolve the NATCA and PASS collective bargaining impasses with the FAA.  The process for amending the FAA PMS set forth in the 1996 FAA Act is separate and distinct from the process for negotiating collective bargaining agreements.  Indeed, the 1996 FAA Act expressly protected the collective bargaining rights of FAA employees with respect to existing labor agreements.  49 U.S.C. §40122(f).

Moreover, in House Joint Resolution 170, enacted just prior to the 1996 Act and then codified four years later in 2000 into subsection (g) of Section 40122, Congress made it abundantly clear that the collective bargaining processes outlined in Chapter 71 of Title 5, "relating to labor-management relations," applies with full force to the new FAA PMS.  49 U.S.C.

§40122(g)(2)(C).[5]

Finally, the FAA's own Personnel Management System *to this day* expressly acknowledges the foregoing to be the case -- under Chapter V of the PMS, "*all* FAA employees, and *all* labor organizations representing FAA employees shall have *the same rights* ... as are available to all Federal agencies, employees, and labor organizations under 5 U.S.C. Chapter 71." Pls. St. of Facts, ¶15 (emphasis added).[6]

The process for amending the FAA PMS, as set forth in the 1996 FAA Act, is thus different from and inapplicable to the recurring negotiation of collective bargaining agreements pursuant to Chapter V of the PMS itself. After the 1996 FAA Act as before, the FSIP has a mandatory jurisdiction under 5 U.S.C. §7119(c) over the resolution of NATCA's and PASS's collective bargaining impasses, and the FSIP's refusal to resolve those

---

[5] Our careful review of the legislative history has not uncovered one word of contrary legislative intent. <u>See</u>, <u>e.g.</u>, H.R. Conf. Rep. No. 104-848 at 26-27 (1996); H.R. Conf. Rep. No. 106-513 at 181-82 (2000).

[6] Moreover, the FAA's claim to the FSIP that the FAA Administrator is authorized under 49 U.S.C. §106(*l*)(1) "to fix the compensation and benefits of ... employees ... as may be necessary to carry out the functions of the Administrator and the Administration[,]" independent of the CSRA and the FSIP, is negated by the express incorporation of section 40122(g)(2)(C) into §106(*l*)(1)("Except as provided in subsections (a) *and (g) of section 40122*")(emphasis added). That reference specifically incorporates "chapter 71, [of Title 5] relating to labor-management relations." The full text of 49 U.S.C. §106(*l*) is included in the Statutory Addendum.

impasses is in plain violation of that statutory provision.

**B.   THIS COURT HAS JURISDICTION TO REMEDY THE FSIP'S VIOLATION OF ITS STATUTORY AUTHORITY AND SHOULD EXERCISE THAT JURISDICTION TO PROVIDE A SPEEDY RESOLUTION OF THIS DISPUTE.**

This Court is "the appropriate forum" to redress the FSIP's disregard of its statutory obligation to resolve the existing collecting bargaining impasses.

It is well established that the district courts have jurisdiction to remedy actions by federal agencies that are contrary to express statutory authority and that have "deprived ... employees of a 'right' assured to them by Congress." Leedom v. Kyne, 358 U.S. at 189.  In Leedom, the Supreme Court upheld the district court's jurisdiction to remedy the National Labor Relations Board's ("the Board") violation of a statutory provision expressly requiring a vote among professional employees as to whether they wanted to be included in a bargaining unit with nonprofessional employees.  The Court so ruled even though the Board's decisions in representation cases are not generally subject to judicial review, except in the context of an appeal of an unfair labor practice case.

> Where, as here, Congress has given a 'right' to the professional employees it must be held that it intended their right to be enforced, and 'the courts ... encounter no difficulty in fulfilling its purpose.'

Id. at 191 (citation omitted).

Similarly, although FSIP decisions typically are reviewable

only indirectly in the context of unfair labor practice cases,
"direct judicial review" may be had "in extraordinary
circumstances[.]"  Council of Prison Locals v. Brewer, 735 F.2d
at 1498 (denying review of the merits of an FSIP decision
prescribing specific contract language).  In the usual case, FSIP
decisions are subject neither to administrative review by the
FLRA nor to judicial review.  Id. at 1499.  The customary avenue
to appeal an FSIP decision is through a refusal to comply,
precipitating an unfair labor practice proceeding before the
FLRA.  An aggrieved party may then petition for review of the
resulting FLRA decision in the courts of appeals.  Id. at 1500.
See 5 U.S.C. §§ 7115(a)(6), 7123(a).

     Relying upon Leedom, however, the D.C. Circuit expressly
recognized that, "in exceptional circumstances, a district court
may exercise federal jurisdiction to invalidate a Panel order
made 'in excess of its delegated powers....'"  735 F.2d at 1500-
01 (quoting Leedom).  "[T]o justify [Leedom] jurisdiction, there
must be a 'specific provision of the Act which, although it is
"clear and mandatory,"' was nevertheless violated by the Panel."
Id. at 1501 (quoting Physicians Nat'l House Staff Ass'n v.
Fanning, 642 F.2d 492, 496 (D.C. Cir. 1980), cert. denied, 450
U.S. 917 (1981)).

     That is precisely the situation here -- a specific statutory
provision, Section 7119(c), mandates that the FSIP "shall"

12

consider the impasse and "shall" either recommend procedures for resolving the impasse or "shall" assist the parties in resolving the impasse. 5 U.S.C. §7119(c)(5)(A).  And as we have shown, nothing in the 1996 FAA Act divests the Panel of this *mandatory* jurisdiction.

A statutory command of "shall" is "mandatory," and "a failure to so [act] ... would be prohibited by the Act and in excess of the Board's powers." Miami Newspaper Printing Pressmen's Local 46 v. McCulloch, 322 F.2d 993, 997 (D.C. Cir. 1963) (regarding the NLRB's failure to certify representation results under Section 9(c)(1) of the National Labor Relations Act, 29 U.S.C. §159(c)(1)).  In Miami Newspaper, the Court of Appeals found that, "[a] party would be as aggrieved by such a failure as by an act of the Board contrary to an express prohibition[,]" and ruled that the district court had jurisdiction over the union's cause of action.  Id. at 997-98.[7]

Likewise, in Railway Labor Executives' Ass'n v. NMB, 29 F.3d 655 (D.C. Cir. 1994) (en banc), cert. denied, 514 U.S. 1032 (1995), the Court declined to limit Leedom to instances in which an agency violated a "'shall not' statutory command[.]"  (NMB exceeded its statutory authority by issuing merger guidelines

---

[7] See also Air Line Dispatchers Ass'n v. NMB, 189 F.2d 685, 689 (D.C. Cir.), cert. denied, 342 U.S. 849 (1951) (In a pre-Leedom decision, the D.C. Circuit upheld district court review of the NMB's refusal to exercise jurisdiction over foreign employees, but sustained the NMB's decision).

permitting employers and the agency to initiate representation proceedings contrary to the provisions of Section 2 Ninth of the Railway Labor Act, 45 U.S.C. § 152 Ninth).  Rather, "an agency ... could as well exceed its delegated powers by failing to adhere to a specific affirmative command."  Id. at 662.

Here the FSIP exceeded its delegated powers by refusing to assist NATCA and PASS in resolving their impasses with the FAA. The Supreme Court recently clarified that "central" to its decision in Leedom "was the fact that the Board's interpretation of the Act would wholly deprive the union of a meaningful and adequate means of vindicating its statutory rights."  Board of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 43 (1991).  Given the FAA's presumptuous attempt to unilaterally and precipitously impose its bargaining proposals within a matter of days, here too the affected employees face a wholesale deprivation of their collective bargaining rights, absent timely intervention by this Court.

**CONCLUSION**

For all these reasons, NATCA and PASS respectfully urge the Court to grant their Motion for Summary Judgment, enter judgment for the Plaintiffs forthwith, and order the declaratory and injunctive relief requested.

14

Respectfully submitted,

_____
William W. Osborne, Jr.
D.C. Bar Identification No. 912089

Debra L. Willen
D.C. Bar Identification No. 257634

Osborne Law Offices, P.C.
4301 Connecticut Avenue, N.W.
Suite 108
Washington, D.C. 20008
(202) 243-3200

_____
Marguerite L. Graf
D.C. Bar Identification No. 455693
General Counsel
National Air Traffic Controllers
Association, AFL-CIO
1325 Mass. Avenue, N.W.
Washington, D.C. 20005
(202) 628-5451

_____
Michael D. Derby
D.C. Bar Identification No. 384632
PASS Counsel
Professional Airways Systems
Specialists, AFL-CIO
1150 17th Street NW
Washington, DC 20036
(202) 293-7277
Counsel for Plaintiffs

Dated: March 16, 2004

15

**STATUTORY ADDENDUM**

LEXSTAT 5 U.S.C. 7119

UNITED STATES CODE SERVICE
Copyright © 2004 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 108-204, APPROVED 3/02/04 ***
*** WITH A GAP OF 108-203 ***

TITLE 5. GOVERNMENT ORGANIZATION AND EMPLOYEES
PART III. EMPLOYEES
SUBPART F. LABOR-MANAGEMENT AND EMPLOYEE RELATIONS
CHAPTER 71. LABOR-MANAGEMENT RELATIONS
SUBCHAPTER II. RIGHTS AND DUTIES OF AGENCIES AND LABOR ORGANIZATIONS

5 USCS § 7119 (2004)

§ 7119. Negotiation impasses; Federal Service Impasses Panel

(a) The Federal Mediation and Conciliation Service shall provide services and assistance to agencies and exclusive representatives in the resolution of negotiation impasses. The Service shall determine under what circumstances and in what manner it shall provide services and assistance.

(b) If voluntary arrangements, including the services of the Federal Mediation and Conciliation Service or any other third-party mediation, fail to resolve a negotiation impasse--
  (1) either party may request the Federal Service Impasses Panel to consider the matter, or
  (2) the parties may agree to adopt a procedure for binding arbitration of the negotiation impasse, but only if the procedure is approved by the Panel.

(c) (1) The Federal Service Impasses Panel is an entity within the Authority, the function of which is to provide assistance in resolving negotiation impasses between agencies and exclusive representatives.
  (2) The Panel shall be composed of a Chairman and at least six other members, who shall be appointed by the President, solely on the basis of fitness to perform the duties and functions involved, from among individuals who are familiar with Government operations and knowledgeable in labor-management relations.
  (3) Of the original members of the Panel, 2 members shall be appointed for a term of 1 year, 2 members shall be appointed for a term of 3 years, and the Chairman and the remaining members shall be appointed for a term of 5 years. Thereafter each member shall be appointed for a term of 5 years, except that an individual chosen to fill a vacancy shall be appointed for the unexpired term of the member replaced. Any member of the Panel may be removed by the President.
  (4) The Panel may appoint an Executive Director and any other individuals it may from time to time find necessary for the proper performance of its duties. Each member of the Panel who is not an employee (as defined in section 2105 of this title is entitled to pay at a rate equal to the daily equivalent of the maximum annual rate of basic pay then currently paid under the General Schedule for each day he is engaged in the performance of official business of the Panel, including travel time, and is entitled to travel expenses as provided under section 5703 of this title.
  (5) (A) The Panel or its designee shall promptly investigate any impasse presented to it under subsection (b) of this section. The Panel shall consider the impasse and [and] shall either--
      (i) recommend to the parties procedures for the resolution of the impasse; or
      (ii) assist the parties in resolving the impasse through whatever methods and procedures, including factfinding and recommendations, it may consider appropriate to accomplish the purpose of this section.
    (B) If the parties do not arrive at a settlement after assistance by the Panel under subparagraph (A) of this paragraph, the Panel may--

(i) hold hearings;

(ii) administer oaths, take the testimony or deposition of any person under oath, and issue subpenas as provided in section 7132 of this title; and

(iii) take whatever action is necessary and not inconsistent with this chapter [*5 USCS § § 7101* et seq.] to resolve the impasse.

(C) Notice of any final action of the Panel under this section shall be promptly served upon the parties, and the action shall be binding on such parties during the term of the agreement, unless the parties agree otherwise.

**HISTORY:**   (Added Oct. 13, 1978, P.L. 95-454, Title VII, §  701, 92 Stat. 1208.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

References in text:

  "The General Schedule", referred to in this section, is contained in *5 USCS §  5332.*

Explanatory notes:

  The word "and" in subsec. (c)(5)(A) was enclosed in brackets to indicate the probable intent of Congress to omit such word.

Effective date of section:

  Act Oct. 13, 1978, P.L. 95-454, Title IX, §  907, 92 Stat. 1227, which appears as *5 USCS §  1101* note, provided that this section is effective 90 days after enactment on Oct. 13, 1978.

LEXSEE 104 P.L. 122

UNITED STATES PUBLIC LAWS
104TH CONGRESS--SECOND SESSION
Copyright 1996, LEXIS Law Publishing, a division of Reed Elsevier Inc.
All rights reserved

PUBLIC LAW 104-122 [H.J. Res. 170]
MARCH 29, 1996
[FURTHER CONTINUING APPROPRIATIONS, FY96]

*104 P.L. 122; 110 Stat. 876; 1996 Enacted H.J. Res. 170; 104 Enacted H.J. Res. 170*

Joint Resolution

Making further continuing appropriations for the fiscal year 1996, and for other purposes.

  Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That Public Law 104-99 is further amended by striking out "March 29, 1996" in sections 106(c), 112, 126(c), 202(c) and 214 and inserting in lieu thereof "April 24, 1996"; and that Public Law 104-92 is further amended by striking out "April 3, 1996" in section 106(c) and inserting in lieu thereof "April 24, 1996" and by inserting in title IV in the matter before section 401 "out of any money in the Treasury not otherwise appropriated, and" before "out of the general fund"; and that section 347(b)(3) of Public Law 104-50 *<49 USC 106* note> is amended to read as follows:

    "(3) chapter 71, relating to labor-management relations;"; and that section 204(a) of the Auburn Indian Restoration Act *(25 U.S.C. 1300* 1 -2(a)) is amended by striking "shall" in the first sentence and inserting in lieu thereof "may".

   [*2] SEC. 2. That the following sums are appropriated, out of any money in the Treasury not otherwise appropriated, for the fiscal year ending September 30, 1996, and for other purposes, namely:

FOREIGN OPERATIONS, EXPORT FINANCING, AND RELATED PROGRAMS
FUNDS APPROPRIATED TO THE PRESIDENT
AGENCY FOR INTERNATIONAL DEVELOPMENT
Assistance for Eastern Europe and the Baltic States
(including transfers of funds)

    For an additional amount for "Assistance for Eastern Europe and the Baltic States" for Bosnia and Herzegovina, including demining assistance, $ 198,000,000: Provided, That of the funds appropriated under this heading by this Act that are made available for the economic revitalization program in Bosnia and Herzegovina, not less than 87.5 percent shall be obligated and expended for programs, projects, and activities, within the sector assigned to American forces of the military Implementation Force (IFOR) established by the North Atlantic Council pursuant to the General Framework Agreement for Peace in Bosnia and Herzegovina and within the Sarajevo area: Provided further, That the preceding proviso shall not apply to any project that involves activities in  [**877] both the American IFOR sector and other contiguous sectors: Provided further, That priority consideration should be given to projects and activities designated in the IFOR "Task Force Eagle civil military project list" in making available funds for the economic revitalization program: Provided further, That none of the funds appropriated under this heading by this Act shall be made available for the construction of new housing or residences in Bosnia and Herzegovina: Provided further, That none of the funds appropriated under this heading by this Act or under this heading in Public Law 104-107 may be made available for the purposes of repairing housing in areas where refugees or displaced persons are refused, by Federation or local authorities, the right of return due to ethnicity or political party affiliation: Provided further, That not to exceed $ 5,000,000 may be transferred to "Debt Restructuring" to be made available only for the cost, as defined in section 502 of the Congressional Budget Act of 1974, of modifying direct loans and loan guarantees, notwithstanding any other provision of law: Provided further, That $ 3,000,000 shall be transferred

to "Operating Expenses of the Agency for International Development" for administrative expenses: Provided further, That the additional amount appropriated or otherwise made available herein is designated by Congress as an emergency requirement pursuant to section 251(b)(2)(D)(i) of the Balanced Budget and Emergency Deficit Control Act of 1985, as amended: Provided further, That the provisions of section 515 of Public Law 104-107, and any similar provision of law requiring advance notification to the Congress, shall be applicable to funds appropriated under this heading, except that the requirements of those provisions shall be satisfied by notification five days in advance of the obligation of such funds: Provided further: That, effective ninety days after the date of enactment of this Act, none of the funds appropriated under this heading by this Act may be made available for the purposes of economic revitalization in Bosnia and Herzegovina unless the President determines and certifies in writing to the Committees on Appropriations that the aggregate bilateral contributions pledged by non-United States donors for economic revitalization are at least equivalent to the United States bilateral contributions for economic revitalization made by this Act and in Public Law 104-107: Provided further, That 50 percent of the funds appropriated under this heading by this Act that are made available for economic revitalization shall not be available for obligation unless the President determines and certifies to the Committees on Appropriations that the Federation of Bosnia and Herzegovina has complied with article III of Annex 1-A of the General Framework Agreement for Peace in Bosnia and Herzegovina concerning the withdrawal of foreign forces, and that intelligence cooperation on training, investigations, and related activities between Iranian officials and Bosnian officials has been terminated: Provided further, That funds withheld from obligation pursuant to the previous proviso may be made available for obligation and expenditure after June 15, 1996, notwithstanding the previous proviso if the President determines and reports to the Committees on Appropriations that it is important to the national security interest of the United States to do so: Provided further, That the authority contained in the previous proviso to make such a determination may be exercised by the President only and may not be delegated: Provided further, That with regard to funds appropriated under this heading by this Act (and local [**878]  currencies generated by such funds) that are made available for economic revitalization, the Administrator of the Agency for International Development shall provide written approval for grants and loans prior to the obligation and expenditure of funds for such purposes, and the Administrator shall receive the agreement of grantees that such funds shall be subject to audits by the Inspector General of the Agency for International Development: Provided further, That with regard to funds appropriated under this heading by this Act (and local currencies generated by such funds) that are made available for economic revitalization, the Administrator of the Agency for International Development shall provide written approval for the use of funds that have been returned or repaid to any lending facility and grantee under the economic revitalization program prior to the use of such returned or repaid funds: Provided further, That, notwithstanding any provision of law under this heading in Public Law 104-107, the provisions of section 532 of that Act shall be applicable to funds appropriated under this heading that are used under the economic revitalization program and to local currencies generated by such funds: Provided further, That such local currencies may be used only for program purposes: Provided further, That for the purposes of this Act, local currency generations under the economic revitalization program shall include the conversion of funds appropriated under this heading into currency used by Bosnia and Herzegovina as local currency and local currency returned or repaid under such program.

Speaker of the House of Representatives.
Vice President of the United States and President of the Senate.

LEXSTAT 49 USCS § 40122

UNITED STATES CODE SERVICE
Copyright (c) 2004 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 108-204, APPROVED 3/02/04 ***
*** WITH A GAP OF 108-203 ***

TITLE 49. TRANSPORTATION
SUBTITLE VII. AVIATION PROGRAMS
PART A. AIR COMMERCE AND SAFETY
SUBPART I. GENERAL
CHAPTER 401. GENERAL PROVISIONS

*49 USCS § 40122* (2004)

§ 40122.  Federal Aviation Administration personnel management system

(a) In general.
  (1) Consultation and negotiation. In developing and making changes to the personnel management system initially implemented by the Administrator of the Federal Aviation Administration on April 1, 1996, the Administrator shall negotiate with the exclusive bargaining representatives of employees of the Administration certified under section 7111 of title 5 and consult with other employees of the Administration.
  (2) Mediation. If the Administrator does not reach an agreement under paragraph (1) with the exclusive bargaining representatives, the services of the Federal Mediation and Conciliation Service shall be used to attempt to reach such agreement. If the services of the Federal Mediation and Conciliation Service do not lead to an agreement, the Administrator's proposed change to the personnel management system shall not take effect until 60 days have elapsed after the Administrator has transmitted the proposed change, along with the objections of the exclusive bargaining representatives to the change, and the reasons for such objections, to Congress. The 60-day period shall not include any period during which Congress has adjourned sine die.
  (3) Cost savings and productivity goals. The Administration and the exclusive bargaining representatives of the employees shall use every reasonable effort to find cost savings and to increase productivity within each of the affected bargaining units.
  (4) Annual budget discussions. The Administration and the exclusive bargaining representatives of the employees shall meet annually for the purpose of finding additional cost savings within the Administration's annual budget as it applies to each of the affected bargaining units and throughout the agency.

(b) Expert evaluation.  On the date that is 3 years after the personnel management system is implemented, the Administration shall employ outside experts to provide an independent evaluation of the effectiveness of the system within 3 months after such date. For this purpose, the Administrator may utilize the services of experts and consultants under section 3109 of title 5 without regard to the limitation imposed by the last sentence of section 3109(b) of such title, and may contract on a sole source basis, notwithstanding any other provision of law to the contrary.

(c) Pay restriction.  No officer or employee of the Administration may receive an annual rate of basic pay in excess of the annual rate of basic pay payable to the Administrator.

(d) Ethics.  The Administration shall be subject to Executive Order No. 12674 [*5 USCS § 7301* note] and

regulations and opinions promulgated by the Office of Government Ethics, including those set forth in section 2635 of title 5 of the Code of Federal Regulations.

(e) Employee protections.  Until July 1, 1999, basic wages (including locality pay) and operational differential pay provided employees of the Administration shall not be involuntarily adversely affected by reason of the enactment of this section, except for unacceptable performance or by reason of a reduction in force or reorganization or by agreement between the Administration and the affected employees' exclusive bargaining representative.

(f) Labor-management agreements.  Except as otherwise provided by this title, all labor-management agreements covering employees of the Administration that are in effect on the effective date of the Air Traffic Management System Performance Improvement Act of 1996, shall remain in effect until their normal expiration date, unless the Administrator and the exclusive bargaining representative agree to the contrary.

(g) Personnel management system.
  (1) In general. In consultation with the employees of the Administration and such non-governmental experts in personnel management systems as he may employ, and notwithstanding the provisions of title 5 and other Federal personnel laws, the Administrator shall develop and implement, not later than January 1, 1996, a personnel management system for the Administration that addresses the unique demands on the agency's workforce. Such a new system shall, at a minimum, provide for greater flexibility in the hiring, training, compensation, and location of personnel.
  (2) Applicability of title 5. The provisions of title 5 shall not apply to the new personnel management system developed and implemented pursuant to paragraph (1), with the exception of--
    (A) section 2302(b), relating to whistleblower protection, including the provisions for investigation and enforcement as provided in chapter 12 of title 5 [5 USCS § § 1201 et seq.];
    (B) sections 3308-3320, relating to veterans' preference;
    (C) chapter 71, relating to labor-management relations [5 USCS § § 7101 et seq.];
    (D) section 7204, relating to antidiscrimination;
    (E) chapter 73, relating to suitability, security, and conduct [5 USCS § § 7301 et seq.];
    (F) chapter 81, relating to compensation for work injury [5 USCS § § 8101 et seq.];
    (G) chapters 83-85, 87, and 89 [5 USCS § § 8301 et seq. through 8501 et seq., 8701 et seq., and 8901 et seq.], relating to retirement, unemployment compensation, and insurance coverage; and
    (H) sections 1204, 1211-1218, 1221, and 7701-7703, relating to the Merit Systems Protection Board.
  (3) Appeals to Merit Systems Protection Board. Under the new personnel management system developed and implemented under paragraph (1), an employee of the Administration may submit an appeal to the Merit Systems Protection Board and may seek judicial review of any resulting final orders or decisions of the Board from any action that was appealable to the Board under any law, rule, or regulation as of March 31, 1996.
  (4) Effective date. This subsection shall take effect on April 1, 1996.

(h) Right to contest adverse personnel actions.  An employee of the Federal Aviation Administration who is the subject of a major adverse personnel action may contest the action either through any contractual grievance procedure that is applicable to the employee as a member of the collective bargaining unit or through the Administration's internal process relating to review of major adverse personnel actions of the Administration, known as Guaranteed Fair Treatment, or under section 40122(g)(3).

(i) Election of forum.  Where a major adverse personnel action may be contested through more than one of the indicated forums (such as the contractual grievance procedure, the Federal Aviation Administration's internal process, or that of the Merit Systems Protection Board), an employee must elect the forum through which the matter will be contested. Nothing in this section is intended to allow an employee to contest an action through more than one forum unless otherwise allowed by law.

(j) Definition.  In this section, the term "major adverse personnel action" means a suspension of more than 14 days, a reduction in pay or grade, a removal for conduct or performance, a nondisciplinary removal, a furlough of 30 days or less (but not including placement in a nonpay status as the result of a lapse of appropriations or an enactment by Congress), or a reduction in force action.

**HISTORY:**   (Added Oct. 9, 1996, P.L. 104-264, Title II, Subtitle B, §  253, 110 Stat. 3237.)

  (As amended April 5, 2000, P.L. 106-181, Title III, § §  307(a), 308, 114 Stat. 124, 126.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

References in text:

  The "effective date of the Air Traffic Management System Performance Improvement Act of 1996", referred to in this section, is 30 days after the date of enactment (enacted Oct. 9, 1996), as provided by §  203 of Act Oct. 9, 1996, P.L. 104-264, which appears as *49 USCS §  106* note.

Effective date of section:

  This section became effective 30 days after enactment, pursuant to §  203 of Act Oct. 9, 1996, P.L. 104-264, which appears as *49 USCS §  106* note.

Amendments:

  2000. Act April 5, 2000 added subsec. (g).

  Such Act further (applicable only to fiscal years beginning after 9/30/99, as provided by §  3 of such Act, which appears as *49 USCS §  106* note), in subsec. (a)(2), added sentence beginning "The 60-day period shall . . ."; and added subsecs. (h)-(j).

LEXSTAT 49 USCS § 106

UNITED STATES CODE SERVICE
Copyright (c) 2004 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 108-204, APPROVED 3/02/04 ***
*** WITH A GAP OF 108-203 ***

TITLE 49. TRANSPORTATION
SUBTITLE I. DEPARTMENT OF TRANSPORTATION
CHAPTER 1. ORGANIZATION

*49 USCS § 106* (2004)

§ 106. Federal Aviation Administration

(l) Personnel and services.

  (1) Officers and employees. Except as provided in subsections (a) and (g) of section 40122, the Administrator is authorized, in the performance of the functions of the Administrator, to appoint, transfer, and fix the compensation of such officers and employees, including attorneys, as may be necessary to carry out the functions of the Administrator and the Administration. In fixing compensation and benefits of officers and employees, the Administrator shall not engage in any type of bargaining, except to the extent provided for in section 40122(a), nor shall the Administrator be bound by any requirement to establish such compensation or benefits at particular levels.

  (2) Experts and consultants. The Administrator is authorized to obtain the services of experts and consultants in accordance with section 3109 of title 5.

  (3) Transportation and per diem expenses. The Administrator is authorized to pay transportation expenses, and per diem in lieu of subsistence expenses, in accordance with chapter 57 of title 5 [*5 USCS §§ 5701* et seq.].

  (4) Use of personnel from other agencies. The Administrator is authorized to utilize the services of personnel of any other Federal agency (as such term is defined under section 551(1) of title 5).

  (5) Voluntary services.

    (A) General rule. In exercising the authority to accept gifts and voluntary services under section 326 of this title, and without regard to section 1342 of title 31, the Administrator may not accept voluntary and uncompensated services if such services are used to displace Federal employees employed on a full-time, part-time, or seasonal basis.

    (B) Incidental expenses. The Administrator is authorized to provide for incidental expenses, including transportation, lodging, and subsistence, for volunteers who provide voluntary services under this subsection.

    (C) Limited treatment as federal employees. An individual who provides voluntary services under this subsection shall not be considered a Federal employee for any purpose other than for purposes of chapter 81 of title 5 [*5 USCS §§ 8101* et seq.], relating to compensation for work injuries, and chapter 171 of title 28 [*28 USCS §§ 2671* et seq.], relating to tort claims.

  (6) Contracts. The Administrator is authorized to enter into and perform such contracts, leases, cooperative agreements, or other transactions as may be necessary to carry out the functions of the Administrator and the Administration. The Administrator may enter into such contracts, leases, cooperative agreements, and other transactions with any Federal agency (as such term is defined in section 551(1) of title 5) or any instrumentality of the United States, any State, territory, or possession, or political subdivision thereof, any other governmental entity, or any person, firm, association, corporation, or educational institution, on such terms and conditions as the Administrator may consider appropriate.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the Plaintiffs' Motion For Summary Judgment, Statement of Material Facts As To Which There Is No Genuine Issue, Memorandum Of Points And Authorities In Support of Plaintiffs' Motion For Summary Judgment, Declaration of John Carr, Declaration of Thomas Brantley and Proposed Order was served on March 17, 2004 in the designated manner of the following:

### <u>Counsel for Defendants</u>

The Honorable John Ashcroft                    **<u>HAND DELIVERY</u>**
U.S. Attorney General
Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Federal Labor Relations Authority              **<u>HAND DELIVERY</u>**
Office of Solicitor
1400 K Street, N.W.
3rd Floor
Washington, D.C. 20424

Federal Service Impasses Panel                 **<u>HAND DELIVERY</u>**
1400 K Street, N.W.
Washington, D.C. 20424-0001

Office of the United States Attorney           **<u>HAND DELIVERY</u>**
Roscoe C. Howard Jr., United States
  Attorney for the District of Columbia
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530


_____
William W. Osborne, Jr.