**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |   |
|---|---|---|
| NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO and PROFESSIONAL AIRWAYS SYSTEMS SPECIALISTS, AFL-CIO, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 04-0138 (RMC) |
| FEDERAL SERVICE IMPASSES PANEL and FEDERAL LABOR RELATIONS AUTHORITY | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Two federal unions, the National Air Traffic Controllers Association ("NATCA") and the Professional Airways Systems Specialists ("PASS"), sue to force the Federal Service Impasses Panel ("Panel") to assist them in resolving bargaining impasses with the Federal Aviation Administration ("FAA"). There is no doubt that the FAA and NATCA and the FAA and the PASS reached impasses in bargaining after lengthy good-faith efforts. The current dispute centers around whether the Panel properly declined to exercise its authority to resolve these impasses. Because the Court cannot conclude that the Panel violated a mandatory statutory duty in refusing to invoke its jurisdiction, the Court will grant summary judgment to the Federal Defendants and dismiss Plaintiffs' complaint.

## I. BACKGROUND FACTS

NATCA represents 16,000 employees of the FAA, approximately 1,800 of whom are affected by the current dispute. PASS represents approximately 11,000 FAA employees, approximately 4,000 of whom are affected.[1] The two unions are labor organizations within the meaning of the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 7101 *et seq.* (also referred to as "Chapter 71"). The Federal Labor Relations Authority ("FLRA" or "Authority"), a defendant here, was established by Congress under the CSRA to protect the rights of federal employees to organize, bargain collectively, and participate through labor organizations. *See* 5 U.S.C. § 7104 and § 7105. The Panel is an "entity within the Authority . . . to provide services and assistance to agencies and [unions] in the resolution of negotiation impasses . . . ." 5 U.S.C. § 7119(c)(1). The Panel's processes, whereby it might impose contract terms if the parties in the federal sector fail to agree, replace the traditional economic weapons of strike or lockout used by the private sector to resolve disputes.

After lengthy negotiations failed to reach accord, NATCA filed a formal Request for Assistance on July 8, 2003, requesting that the Panel consider an impasse reached in collective bargaining negotiations with the FAA (Case No. 03 FSIP 144). PASS filed similar formal Requests of Assistance on various dates in July 2003 requesting Panel assistance due to impasses in bargaining with the FAA (Case Nos. 03 FSIP 149, 150, 151 and 157). The FAA filed statements of position with the Panel on September 22, 2003, asserting that the Air Traffic Management System Performance Act of 1996 completely divested the Panel of any jurisdiction over the impasses. The

---

[1] The facts are taken from Plaintiffs' Statement of Material Facts as to Which There is No Genuine Issue ("Pls.' Facts").

FAA does not dispute the fact that there were impasses after good faith negotiations.  In light of the FAA's argument concerning the Panel's jurisdiction,  the Panel solicited legal positions from all of the parties on the issue and, on January 9, 2004, issued companion decisions.  In the decisions, the Panel declined to address the impasses "because it is unclear whether the Panel has the authority to resolve the parties' impasse[s]." Compl., Ex. A at 1, Ex. B at 1.  It added that,

> This determination to decline to assert jurisdiction is made without prejudice to the right of either party to file another request for assistance if the underlying threshold question is resolved in the appropriate forum consistent with the Union's interpretation of the applicable statutory provisions.

Compl. Ex. A at 4, Ex. B at 4.

NATCO and PASS filed the instant action on January 30, 2004, seeking resolution of this jurisdictional question.  Specifically, they ask the Court to declare that the Panel's decisions of January 9, 2004, violate its statutory authority, exceed its jurisdiction under 5 U.S.C. § 7119, and deprive NATCA, PASS and their respective represented employees of their statutory rights.  The unions ask the Court to order the Panel to resolve the existing impasses.  In the meantime, the FAA submitted its final bargaining proposals that were the subjects of impasses in its negotiations with NATCA and stated that it "plans to put into effect these important changes . . . absent Congressional action, sixty (60) days after submission, excluding any period during which Congress has adjourned *sine die*[,] or on March 30, 2004." Pls.' Facts ¶ 11.  At the time of the briefing, the FAA was prepared to take the same action with respect to the PASS proposals on which impasses had occurred.  *Id.* ¶ 12.

## II.  STATUTORY PROVISIONS

The FLRA is the federal agency responsible for administering the CSRA.  It

adjudicates unfair labor practice complaints, negotiability disputes, bargaining unit and representational election matters, and exceptions to arbitration awards. *See* 5 U.S.C. § 7105(a)(2). The Panel is "an entity within the Authority, the function of which is to provide assistance in resolving negotiation impasses between agencies and exclusive representatives." 5 U.S.C. § 7119(c)(1).

On November 15, 1995, Congress enacted Section 347 of the 1996 Department of Transportation ("DOT") Appropriations Act, Pub. L. No. 104-50, § 347, 109 Stat. 460 (1995), directing the FAA to develop and implement a new personnel management system, to address "the unique demands on the agency's workforce." Section 347(b) specifically stated that Chapter 71 of the CSRA, which authorizes collective bargaining for federal employees and enforcement through the FLRA and the Panel, would not apply to the new FAA personnel management system, except for the prohibition of the right to strike in 5 U.S.C. § 7116(b)(7). *See* Pub. L. No. 104-50, § 347(b).

On March 28, 1996, the FAA issued a new Personnel Management System ("PMS"), organized in chapters addressing various aspects of the management of the agency's human resources. Chapter V dealt with Labor Relations and provided:

> <u>EMPLOYEE RIGHTS</u>
>
> The FAA, all FAA employees, and all labor organizations representing FAA employees shall have the same rights, and be subject to the same responsibilities and limitations, as are available to all Federal agencies, employees, and labor organizations under 5 U.S.C. Chapter 71.

Pls.' Facts ¶ 15. This provision remains part of the FAA's PMS. *Id.* On March 29, 1996, Congress passed House Joint Resolution 170, Pub. L. 104-122, 110 Stat. 876 (1996), which amended Section 347 of the 1996 DOT Appropriations Act to *require* application of Chapter 71, relating to labor-

management relations, to the PMS at FAA. *Id.* ¶ 17.

Thereafter, on October 9, 1996, Congress enacted the Air Traffic Management System Performance Improvement Act of 1996, Pub. L. 104-264, Title II, 110 Stat. 3227 (1996) ("the 1996 FAA Act") to establish a procedure for "developing and making changes to the personnel management system initially implemented by the Administrator [of the FAA] . . . on April 1, 1996 . . . ." 49 U.S.C. § 40122(a); Pls.' Facts ¶ 18. The 1996 FAA Act required the FAA to negotiate with the unions representing FAA employees over changes to the PMS and to engage in mediation if the negotiations did not reach agreement. However, if negotiations end in an impasse, the 1996 FAA Act "provided for the FAA Administrator to transmit its proposals, along with the bargaining representative's objections, to Congress. Proposed changes to the PMS were not to take effect until sixty days after the Agency's submission to Congress." *Id.* at ¶ 19 (citing 49 U.S.C. § 40122(a)).

In 2000, Congress codified the provisions of House Joint Resolution 170 by adding subsection (g) to 49 U.S.C. § 40122 to specify that Chapter 71 of Title 5, "relating to labor-management relations" would apply to the FAA PMS. Pub. L. No. 106-181, Title III, § 307(a), 114 Stat. 124 (2000). *Id.* at ¶ 21.

### III. ANALYSIS

The relevant question here is who should determine the interplay between Chapter 71, the basic guide to federal labor-management relations, and the particular statutory provisions that affect labor relations at the FAA, found at 49 U.S.C. § 40122 and 49 U.S.C. § 106? Because the Authority is the expert agency charged with "provid[ing] leadership in establishing policies and guidance relating to matters under . . . [Chapter 71]," 5 U.S.C. § 7105(a)(1), Defendants argue that

the question should be presented to the Authority in the guise of an unfair labor practice proceeding. Defendants suggest that the best way to present the issue is the filing of unfair labor practice charges by the unions challenging the FAA's actions as a failure to bargain in good faith.  *See* Defendants' Memorandum In Reply to Plaintiffs' Opposition to Defendants' Motion To Dismiss ("Defs.' Reply") at 5-6.  The FAA contends that, in light of the 1996 FAA Act, its obligation to bargain in this matter does not extend to participation in the Panel's impasse resolution procedures.  Thus, Defendants argue that if the FAA is indeed required to bargain under 5 U.S.C. § 7119, "a refusal to submit the impasse to the Panel would constitute an unfair labor practice."  *Id.*  Similarly, Defendants assert that "the unfair labor practice forum could also be open to the unions were the FAA to implement its proposals [unilaterally]."  *Id.* at 6.

The Court agrees that the unfair labor practice processes for the federal sector would allow the unions to take these issues to the Authority and then to the Circuit Court of Appeals for review, as necessary.  In addition, the Authority correctly argues that the unions essentially raise an "obligation to bargain" issue, *i.e.*, a question of whether the exact issues that led to the impasses[2] constitute "conditions of employment" within the meaning of 5 U.S.C. § 7102 and under the FAA.[3]  *See* Defs.' Reply at 3; s*ee also Am. Fed. of Gov't Employees v. FLRA*, 778 F.2d 850, 854 (D.C. Cir.

---

[2] The issues that led to the impasses were not described in the parties' briefs, but they were articulated by the parties as "primarily if not purely economic" at a telephone hearing held on March 31, 2004.

[3] 5 U.S.C. § 7102(2) defines employee's rights to include the right "to engage in collective bargaining with respect to conditions of employment . . . ."  5 U.S.C. § 7103(a)(14) defines "conditions of employment" to mean "personnel policies, practices, and matters . . . affecting working conditions, except that such term does not include policies, practices, and matters – (C) to the extent such matters are specifically provided for by Federal statute."

1985)(negotiability issues are subject to determination by the Authority, not the Panel); *Interpretation and Guidance*, 11 FLRA 626, 628-29 (1983)(Panel authority under § 7119(c)(5) does not include the authority to resolve questions concerning the underlying obligation to bargain.). The Panel's impasse resolution procedures constitute simply one aspect of the collective bargaining process and complaints about an agency's participation – or lack thereof – in those procedures could be deemed unfair labor practices. *See Interpretation and Guidance*, 11 FLRA at 628 n.5.

When agency action constitutes an arguable unfair labor practice, jurisdiction rests exclusively with the Authority and the Courts of Appeals. *See* 5 U.S.C. § 7123; *Steadman v. Governor, U.S. Soldiers' and Airmen's Home*, 918 F.2d 963, 966 (D.C. Cir. 1990). For these reasons, the Court concludes that it is without jurisdiction and should defer to the FLRA.

The unions argue with some force and logic that the Panel failed to perform specific mandatory statutory duties, and that such failure ultimately gives this court jurisdiction over the matter. They rely on the Supreme Court's decision in *Leedom v. Kyne*, 358 U.S.184 (1958), for the proposition that "district courts have jurisdiction to remedy actions by federal agencies that are contrary to express statutory authority and that have 'deprived . . . employees of a right assured to them by Congress.'" Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary ("Pls.' Mot.") at 11 (citing *Leedom*, 358 U.S. at 189); *see also Railway Labor Executives' Association v. National Mediation Board*, 29 F.3d 655, 661 (D.C. Cir. 1994)("Federal courts have jurisdiction to review action[s] taken in excess of delegated power")(internal quotations and citation omitted); *United Food and Commercial Workers, Local 400 v. NLRB*, 694 F.2d 276, 278 (D.C. Cir. 1982)(an otherwise nonreviewable agency action may be reviewable where the agency has "contravened a clear and specific statutory mandate.").

Thus, although the general rule is that the Panel's orders are unreviewable, "in exceptional circumstances, a district court may exercise federal jurisdiction to invalidate a Panel order made 'in excess of its delegated powers and contrary to a specific prohibition of the Act.'" *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1500-1501 (D.C. Cir. 1984)(quoting *Leedom*, 358 U.S. at 188). However, this Circuit has held that the *Leedom* exception is very narrow and "intended to be of extremely limited scope." *Griffith v. FLRA,* 842 F.2d 487, 493 (D.C. Cir. 1988); *see also Brewer*, 735 F.2d at 1500-1501 ("The invocation of *Leedom* jurisdiction is extraordinary; to justify such jurisdiction, there must be a specific provision of the Act which, although it is clear and mandatory, was nevertheless violated by the Panel.")(internal quotations and citations omitted).

The unions argue that the CSRA contains mandatory commands to the Panel that it "*shall* promptly investigate any impasse," "*shall* consider the impasse," and "*shall* either – (i) recommend . . . procedures for the resolution of the impasse; or (ii) assist the parties in resolving the impasse . . . ." 5 U.S.C. § 7119(5)(A). In response, Defendants argue that the Panel fulfilled these mandates, but the record clearly suggests otherwise. While the Panel may have *initiated* an investigation of the respective impasses, the immediate and adamant position of the FAA that the Panel had no authority to proceed caused a premature termination in the impasse resolution process.

Despite the attractive invitation to decide these important issues, the Court concludes that this is not an appropriate fact pattern for the invocation of district court jurisdiction pursuant to *Leedom v. Kyne*. The Panel's refusal to resolve the parties' impasses in light of arguable legal questions concerning the Panel's authority cannot be deemed a violation of a "clear and mandatory" statutory provision. *See Leedom*, 398 U.S. at 188. In considering an impasse, the Panel must always determine in the first instance whether the impasse at issue is subject to its jurisdiction. The fact that

the FAA and the unions here agree that there are impasses *in fact* in their negotiations does not necessarily translate to impasses that are subject to the Chapter 71 procedures.  The Panel did not specify its reasoning when it declined to complete its own procedures.  The Panel's decision can easily be read to mean that it declined to decide whether the impasses involved bargaining subjects under Chapter 71 insofar as it is applicable to the FAA.  It cannot be said that such a result contravened an explicit or mandatory statutory obligation.  Recognizing that the Authority might be said to lack expertise to interpret the 1996 FAA Act, the Court still concludes that it is the better forum to decide whether the FAA is required to follow the entire impasse-resolution process of Chapter 71 for these particular impasses.

Accordingly, Plaintiffs' motion for summary judgment will be DENIED and Defendants' motion for summary judgment will be GRANTED.

A memorializing Order accompanies this Memorandum Opinion.


Dated: February 22, 2005.            _____/s/_____
                                     ROSEMARY M. COLLYER
                                     United States District Judge